185595 Andrew Averett MD et al. v. U.S. Department of Health and Human Services et al. Or argument not to exceed 15 minutes per side, Laura Myron for the opinion. You may proceed. Good morning. Good morning. I'd like to reserve four minutes for rebuttal, please. Very well. May it please the court, Laura Myron for the government. The district court here fundamentally misunderstood how the statutory and regulatory schemes work, and as a result, the underlying legal reasoning has no basis in the statute and also led to the anomalous result that the remedy doesn't address plaintiff's complaint of injury. If I could start with the statute, it says in the Medicaid part of the statute that enhanced payments shall be provided where services are furnished by a physician with a primary specialty designation in one of three areas of medicine, family medicine, general internal medicine, and pediatrics. Primary specialty designation is not a term of art. It's not defined by Congress. It doesn't appear in lots of other places. That doesn't mean it's ambiguous. That's really the problem I have with your argument. I don't see any effort to demonstrate ambiguity, really any effort to interpret these words at all, much less the statute generally. As I read the brief, the agency says this term's not defined, and now we basically go to Chevron step two. Am I misunderstanding the nature of the argument? I believe, Your Honor, what CMS said is that in the Medicare context, there's a preexisting enrollment designation, but no such comparable designation exists in the Medicaid context. So there's no obvious meaning of the term. But we don't even try in the brief. I mean this isn't like totally inscrutable language. We interpret statutes. More often than not, we're interpreting terms that aren't defined. So, I mean, it's a bit puzzling to me to have the agency make no effort, to construe this language as language, as opposed to making a policy judgment about how we ought to do this. And, I mean, we said in FCC versus Montgomery, if the agency wants us to defer to an interpretation, first you have to do the work of interpreting it. And I'm struggling to see that here. Sure, Your Honor. I think the question here is what does the term designation mean? Primary specialty designation. Sure, a designation of a primary specialty. And what the district court said is that that doesn't mean that you can allow people to self-designate based on demonstrating that their practice history is in that particular area of medicine. CMS said we will allow people, and this is at 27-675, Volume 77 of the Federal Register, a physician may attest their designation if they either are board certified in that area of medicine or can demonstrate, they can self-attest, if they can demonstrate that that's the majority of their practice. That's your reg you're talking about right now. That's the Notice of Proposed Rulemaking, Your Honor. Right, yeah. Yes, and that. I mean, okay. How is that? Well, I mean, are you saying, you are saying the term primary specialty designation is ambiguous. Yes, Your Honor. In the meaning of Chevron. Yes, Your Honor. But, I mean, you don't even try to interpret it. You just skip that step. I disagree, Your Honor. Really? Where is the, you know, using every traditional tool of judicial interpretation, statutory interpretation, as Chevron itself says? I don't see any of that, nothing. Your Honor, the question is what does. Judge Lightman does a great deal of that. Your Honor, the question is what does this phrase mean? And in the brief and in the Notice of Proposed Rulemaking, what we have said is there's no obvious meaning. Okay, go ahead. I mean, Judge, did you look at any of the traditional tools of interpretation? That's what he's asking. Did you do that? Certainly, Your Honor. And where is that in the brief? And where does it go through how those traditional tools don't solve the issue? The question, you have to start when you're asking whether a phrase is ambiguous with, well, what does it mean? Right, right. And what the brief says is that it has no obvious meaning. We don't stop there is my point. We do not stop at no obvious meaning. You could have a high school student do our job if that was the question. I mean, I'm really just amazed that a federal agency thinks that we go to Chevron Step 2 because it's not obvious. We work a lot harder than that at Step 1. What we did both in the brief and what the agency did is say, are there other instances in which the language has been used in the statute? Did you do that? Is there evidence from? Can I ask you a question? Did you go through the dictionaries? Just an ordinary way, like starting at the most elementary function. Did you go through the dictionaries, lay out the definition, see if that provided a solution? Well, no, Your Honor, not the dictionary specifically, but I don't believe that's required as a tool of statutory interpretation. No. Darn good place to start. But it's usually where, right, if you look at most statutory interpretation cases, take this outside the agency context. If we could simply say, oh, it looks ambiguous to us, now let's go into the world of ambiguity where we get to make stuff up or defer to agencies, we're not doing our job. And our job is to interpret statutes in part. And so one thing I think that's incumbent when you come to us and say it's ambiguous is to demonstrate ambiguity through the traditional tools. That's all we're saying. And so what we need to get us where you want to get us is help showing us how these traditional tools don't solve the problem. Sure, Your Honor. And I apologize if the brief doesn't address your concern, but the questions in statutory interpretation are, does the text provide a clear answer? Is there some other context from the statute or the context in which the statute was enacted that might demonstrate an unambiguous meaning for the term? And I submit that what CMS said and what we've said in the brief is there is no obvious meaning of this phrase. There's no other examples of this in the statute other than this one in the Medicare provision. Medicare, which is being enacted at the same time. Certainly, but as CMS said, we understand that to have the meaning in the Medicare context of a designation on the CMS forms. The Medicare statute includes the majority proposition, the 60% proposition, that the majority of your work is done in this area, correct? It does as an additional limiting requirement. And that's the problem. And, I mean, Judge Lightman's opinion is a very fine example of doing statutory interpretation with the traditional tools. And just let me finish. One of which is he looks at this neighboring statute, it's a closely related statute, which has the exact same term, primary specialty designation. The problem for the agency here, and this would be in terms of does this even survive step two? You know, set aside step one. The problem for the agency is that in the Medicare statute, the 60% requirement is additional, as you said. It stands apart from primary specialty designation. It's not encompassed in that. It's not something that tells us whether someone has a primary specialty designation. It's something altogether different. And so when the agency in the Medicaid statute now wants to make 60% part of the primary specialty designation, they are conflicting by the most basic tools of statutory interpretation. Please, you've got to let me finish. By the most basic tools of statutory interpretation. That definition conflicts with the meaning that this phrase or the scope that this phrase would have in the neighboring statute. I disagree, Your Honor, because in the Medicaid context, it is offered to physicians as an additional, optional, alternative means of demonstrating a designation. Unlike the Medicare context, in which Congress imposed it as a limitation on physicians who would be otherwise eligible for payments, it is offered as an option in addition to board certification that would allow physicians to demonstrate designations. You're thinking in policy terms, like this is a good thing. We're not being mean to the physicians. And I'm not suggesting you are by any means. I'm not suggesting this is, as a policy matter, crazy. I'm not at all. But I'm saying as an interpretive matter, it is clear from the Medicare statute that 60% is not part of the scope of the meaning of primary specialty designation. Judge Lightman, I think, pretty well demonstrates that. And what I'm trying to impress upon the government here, because we see this over and over and over again, is that our question is an interpretive question, at least until we totally give up and throw up our hands and we're totally stumped about what the thing means. We're judges. We have an interpretive question. The agency needs to try to adapt to the question we're answering rather than the policy questions that fall within your expertise and the stuff you otherwise do. If I could say two things in response. Of course. In the Federal Register and the Notice of Proposed Rulemaking, what the agency says is we will allow physicians to self-designate if they can show that it's in fact their specialty, the area in which they practice. It does not say we will allow physicians to self-designate and we are requiring them to show this particular area in addition to board certification and licensure and whatnot, which is required in the Medicare context. Right, it's either or. I understand that. Yes, sir. And so in order for plaintiffs to be correct here, their theory is, and the district court's theory, was that any self-designation, as in any evidence of actual practice, must be sufficient because the term designate must mean that any designation. Maybe. I mean, that's what's absent here. I mean, that's what's absent from the blue brief is really a linguistic demonstration. Linguistic, not policy. A linguistic demonstration at Step 1 that the interpretation that you're challenging right now is, in fact, untenable. I see you're out of time, so I'd be happy to address your question now. That's okay. We're on rebuttal. Please go ahead and address it. Sure. So I disagree that what is required at Chevron Step 1 is a dictionary definition that designation means something other than it has a particular meaning. It's a reductionist view of statutory interpretation using all the tools that Chevron requires, just for the record. Certainly. And the question is whether the term is, Congress has directly spoken to the issue, whether it is unambiguous. And I submit that that term has no meaning, and so you cannot. Really? Really? This is linguistic nihilism. Without even trying. Without even trying to figure out, without even looking at a dictionary, the agency says the term has no meaning. That's where we're at. It's just like the agency darkens the door and we defer. That basically seems to be what the agency expects. No, Your Honor. What the agency said is this has a meaning in the Medicare context, but we cannot import that meaning into the Medicaid context. It doesn't apply in this conceitedly inconsistent context. And so we are going to approximate that by allowing either a demonstration of board certification, which is comparable to what's required on the CMS 855, or self-designation, if you can demonstrate that your practice is actually in that area of law. So I submit that the term, what the agency is doing here, is taking a term that has a meaning in one context and trying to fit a meaning in a different context that's approximately close. And I see I'm out of time. Sure. Question. I think it's a justiciability argument you're making otherwise. Yes, Your Honor. I mean, I guess first, what exactly? Are you saying their claim is not justiciable? We're saying the remedy issued here doesn't fix the problem that they've been thinking about. Are you saying they lack standing or it's not justiciable because of a redressability problem? I mean, you know Lujan, and we all read that stuff. We have not said they lack standing because it's within the authority of the court to issue an opinion that would demonstrate that they are entitled to money under the statute but not the regulation. But absent such a ruling like that, the fact that the regulation is valid or invalid doesn't address their entitlement. And I understand. I mean, I understand the agency's sense that if this case ends at step one, you're entitled to know what it means, the statute. The problem I see, and I just want to give you a chance to respond with your sort of quasi-justiciability argument, is the money now is property in their hands. And they have an imminent threat of invasion of that property interest in the form of a recoupment action based on a failure to meet the 60% requirement. That's as the record comes to us. If they get an order, an injunction, or a ruling from this court that either bars the government from proceeding on that theory or says that that theory is not valid, that fully remedies the imminent threat to their extant property interest that allows them to bring this suit. So it just seems that it does fully redress. The government's thinking as if they don't have the money yet, and they're here saying, you know, I'm entitled to the money. They've already got the money. I mean, it's like, you know, we're government employees. I mean, I don't have to show an entitlement to the money that was put in my bank account from the government two months ago. It's my money. If you want to take it, then you have to go. I mean, the government would have to go through a process. The only basis on which they got the money is by attesting that they met a metric that they knew they wanted to meet. Right, and they got paid the money. But it's property. You can't take it from them unless you show the entitlement at this point. No, you're right. The burden doesn't shift to the government to show that plaintiffs are still not entitled to the money. The burden shifts to plaintiffs to show that they are in fact entitled to the money as a defense to the recoupment action where it is undisputed that they no longer qualify on the basis on which they were paid. They don't need an order saying they're entitled to keep the money. They don't. It's property in their bank account. The Due Process Clause has something to say about this. You can only get it if you show. It's your burden to show that they were not entitled. At the point at which it is undisputed that they no longer qualify on the basis on which they received the money. Right, okay, and let's say we disagree. And let's say they're not disentitled because of the 60% requirement. They're not. Let's just say we hold that. Then we're done. And the imminent threat to their property interest is gone. We have redressed the imminent invasion that Lujan says that they need to have, and it's justiciable. I disagree, and I believe the district court also disagreed because the district court expressly said that the holding here doesn't run against TennCare and that the recoupment can continue against plaintiffs. So now speculation can either create justiciability or take it away. And so now, I mean, if you put this kind of in a Lujan mindset, now you're asking us to say, based on speculation about whether TennCare might pursue recoupment on a different theory or whether this suit survives in any form after we're done with it. It's speculation that there would be some future recoupment action that could ultimately take this stuff away in another grant. And that's just not in this record. I disagree that it's a different theory. The theory is that plaintiffs are not entitled to the money. No, but it's a theory as to why they're not entitled. Sure, but in other words. If we blow up your current theory, they're in the clear until you come up with another theory, which is itself speculative. So if I may. It's that simple. The part of what's going on here is that on the statutory interpretation basis, the district court's theory of why the regulation was invalid is that it was too broad, that it allowed this billing history metric, but it wasn't allowed to do so.  No, it's not too broad. It was that you required this metric when the statute precludes that metric as a requirement for that. Well, as I said, we leave in place only the board certification part, and I understand there's a... I think we're just talking around each other, but did you have a question, Amal? No, it went to redressability. It seems to me there's this case, Northeastern Florida, and from the Supreme Court, that says if a barrier... Let's assume you're right and that the burden stays on them. That case talks about if they remove a barrier, that's enough to ultimately receiving their relief. So assume you still have the money, because I think Judge Ketledge is right. If they have the money, it's a whole different case, but assume you had the money and they wanted it, and this litigation assisted them in removing a barrier to getting that money. That case out of the Supreme Court seems to make pretty clear that once you remove that barrier, that's enough to have redressability. Am I wrong about that? It's enough if plaintiffs can show that the removal of the barrier would benefit them, that if they could show that the district court's interpretation of the statute would, in fact, entitle them to additional payments, would qualify them under the statute. What about benefit in it gets the agency away from them, and they can keep the money in peace until the agency decides to come back if it does? That's a benefit. I disagree that. I believe I've answered. We are, as you said, going around in circles. But I disagree that this is something that's stopping the recoupment effort. In fact, the district court made clear that it's not, and so I'm over time. All right. Very good. Did you reserve rebuttal time? I did. No. How much? Four minutes. All right. You'll have your four minutes. Thank you. Good morning. Good morning, Your Honor. May it please the Court, my name is Michael Cotone from the law firm of Batsbury & Sims, and I'm here on behalf of the Appellees, which are, as Your Honors know, 21 Tennessee physicians who provide primary care medical services to underserved populations in rural areas of Tennessee to pick up where Your Honors left off. I'll address redressability first. I think the context of the procedural history is important here. TennCare had sought recoupment from the physicians solely on the basis that they didn't qualify under the final rule. That was the only reason that TennCare provided. Why isn't TennCare a part of this litigation? TennCare is not a part of this litigation because the only issue in this litigation is whether or not the final rule was valid. TennCare made it clear to the physicians that it did not have the authority to invalidate the final rule, that it was bound to follow the final rule unless the physicians got some judgment saying that the final rule was invalid. So the recoupment proceedings should be ---- I know it stayed. Will it go away if we rule in your favor here? We fully expect that it will immediately go away. The fact that TennCare has stayed the proceedings, I think, is an indication on TennCare's part that this litigation really will be outcome determinative. Can I ask you one other question because I understand that? But why aren't they a mandatory party under Rule 19? I don't believe that they're a mandatory party under Rule 19, Your Honor, strictly because the only relief that we are seeking in this particular litigation is invalidation of the final rule itself. And I simply don't think that they are a necessary party for the physicians to obtain that relief. But I understand what you're saying. So you're asking for an intermediate step. But the ultimate relief, which is your friend's point on the other side, the ultimate relief they seek, they need TennCare as a result, right? Well, Your Honor, I don't think so. The main reason is that that's certainly not the ultimate relief that we're seeking in the context of this litigation. No, I understand that. But what she's ---- one of her arguments is, and I'm butchering it, but is basically, or Judge Keflick might have been making it, but the point that they can come after you, TennCare could continue to come after you no matter what we do here, correct? That's correct, Your Honor, with the caveat that the only reason that TennCare has provided for its recoupment proceedings has been on the basis of the final rule. TennCare itself did not perceive itself to be a necessary party to this litigation, is aware of the litigation and could have joined if it wanted to. It didn't perceive itself as being necessary for the relief to occur. And I think that really sort of sums up where all of the different regulatory entities stand in these proceedings. Why is primary specialty designation not a specialized term that Congress wanted the agency to define? Well, Your Honor, just to unpack that a little bit, I think that it could have a technical meaning, but that wouldn't necessarily be a meaning that the agency was required to define. That could have a technical meaning in the medical profession. And as we mentioned in our brief, there are certain possibilities for that. The key point is that even if CMS needed to provide some sort of definition for primary specialty designation, it can't define that term in a way that Congress has foreclosed through examining, through using the traditional tools of statutory interpretation. What about board certification? Board certification, there's a number of problems with using board certification. The most obvious problem is that it certainly can't be a primary designation board certification itself because many physicians have more than one board certification. So that is not, in and of itself, doesn't track onto the language of primary specialty designation. Secondly, and more importantly, I think a regulation limiting enhanced payments under the Medicaid statute to board certified physicians would almost certainly run afoul of Chevron Step 2. And the reason for that is that Congress intended in enacting the Medicaid statute to incentivize physicians, especially in underserved areas, to provide primary care services to Medicaid patients. And there is a higher percentage or higher concentration of non-board certified physicians in those underserved areas. There are a number of reasons why that is the case. Of course, this would have all come out had CMS actually enacted that regulation, subjected to notice and comment. Absent that or the 60%, how does this have any teeth? In other words, how do we give it meaning? Well, I think, Your Honor, that the most obvious answer to that question is to look to CMS's regulation under the related Medicare statute. And under that regulation, it defines primary specialty designation as the designation that the physician lists on his or her Medicare enrollment form. And it's important to note that that information on the Medicare enrollment form doesn't come from nowhere. It comes from a physician's designation of his or her primary specialty on the National Provider Identifier application, or the MPI application. Can we only do one there? You can only have, you have to designate a primary specialty on your MPI application. And so just so I understand it, you have to designate it and you pick, like, okay, cardiovascular surgeon or whatever. And that's it? That is your primary? That is your primary, Your Honor, yes. And for each year or for each, you know, providers can change their designation on their MPI form to relate to the realities of their practice, and they, in fact, do. So that's a Medicare form you're talking about? No, Your Honor. A Medicaid form? Neither. It applies to essentially every physician in the United States, regardless of whether they're enrolled in Medicare and Medicaid. Can you tell me, again, just tell me about this form? Like, whose is it? Right. When did it start? To what extent do you know? Sure. So essentially, I don't have start dates for it. It has been past my horizons, as we might say. But essentially, it works sort of like a Social Security number for physicians. So there's a National Provider Identifier number that each physician has. And to get that number, and it's required for multiple purposes, including HIPAA, essentially every provider in the United States has one. And to get that number, a physician has to submit an application. And on that application, a physician has to designate his or her primary specialty from a number of taxonomy codes. And there are taxonomy codes that correspond to all of the primary specialties that are at issue here. And there's a definition that corresponds to each of those taxonomy codes. And who puts out this form, if I may? The MPI form. What's MPI mean? National Provider Identifier Number. So the application is running this whole thing. The application, I believe, is run through HHS. It might even be through one of the sub-departments there. I could be incorrect about that, but it is a government entity, a federal entity that is in charge of the MPI application process. Probably some of this might be in the Federal Register somewhere, explaining this form and what they have to do, I would imagine. Yes, Your Honor. And we've cited in our briefs, we cited where the form is online to be exact. I blew past that when I read it, so thank you. Go ahead, and we'll. No, go ahead. I think that answered my question. I think that the Court was right to focus on the fact that the traditional tools of statutory interpretation, in this case, generate an answer, generate an answer to the specific question at issue. And what is that answer? The answer is that a primary specialty designation does not include the concept of a billing metric. That's exactly what the district court held, and it was certainly in a well-reasoned decision, and we think it's correct. And so the way you think it gives the statute teeth is because of this, there are other mechanisms that would ordinarily be used by doctors in the trade to designate themselves. Yes, Your Honor. And that's the MPI. And you said, and I think I interrupted you, so I apologize. You said in other, the Medicare reg references this? Yes, Your Honor. It's indirect, but it does reference it. So the Medicare regulations defines a primary specialty designation as the primary specialty that a provider identifies on his or her Medicare enrollment form. And that information on the Medicare enrollment form, in turn, corresponds to the information on the MPI application. Does it have to? I believe it does, yes. That answers my question. Thank you. Yes, Your Honor. So here, the traditional tools of statutory interpretation have generated an answer as the district court recognized. Unless there are any other questions, I believe we'll rest on our briefs. Anything further? No. Thank you, Your Honor. Rebuttal. Thank you, Your Honor. If I could briefly address some questions about the MPI and the CMS form, then this is on around page 1314 of our reply brief. The MPI is an intelligence-free designation, which means that the number itself carries no information with it. Providers can designate, as was mentioned, more than one specialty. They do indicate a primary specialty. But that application doesn't carry with it any representation that a provider is qualified to practice medicine or, in fact, practices medicine in that area of law. The CMS form at issue does carry with it those certifications. So when you fill out the CMS form, a provider must certify that they have a particular specialty and that it, in fact, they comply with state licensure and certification requirements in that specialty and, of course, comes with attendant consequences and other consequences in the Medicare program for a particular specialty designation. There's no reason to think that Congress intended primary specialty designation in the Medicaid provision to reference the MPI, and, in fact, in the final rule at 66-674, CMS says that that is essentially comparable to a self-designation with no additional support and rejects the premise that physicians in the Medicaid context should be able to come in and say, I'm a particular kind of specialist without any additional support for that. What is the government's understanding of the purpose of the MPI form? The MPI was created as part of HIPAA, and it's intended to provide a uniform billing identification number for physicians across both CMS and private insurance. And what is the purpose to the extent of this primary specialty designation on the MPI form? It's a unique identifier, and along with all the other information that a provider would include in the application, allows CMS to identify which person it is. So if you're John Smith and you're a cardiologist, then you're distinguishable from John Smith who's a pediatrician. The numbers aren't unique to each physician? No, they are, Your Honor. What I'm suggesting is that the information you provide as part of your MPI application only goes to identifying you as a unique physician. It doesn't carry with it any representation about you're actually a particular. I think it's something akin to a social security number, a number unique to them. Yes, and it was designed, and this is part of HIPAA, to unify billing across both private and public insurance programs. So it was to prevent providers from having lots of different billing identification numbers. There's no reason to think that it was what Congress meant to reference in this particular statutory provision, and if I may, I understand that you disagree with the way we've presented this case. I'm not criticizing it. Well, I am criticizing it, frankly. But if I could, even my friend on the other side has conceded that there are multiple meanings for this provision, and by virtue of that, it is ambiguous in this context. We haven't even gotten started on that ourselves. Yeah, but is that right, just because there's multiple meanings it's ambiguous? Because if you can give a best reading, as this Court has said, to the statute, then that's what it means. If it could be interpreted in multiple different ways to mean different things, then it's ambiguous as a textual matter. I said the opposite. Basically, if you think we can give it a best reading, let's say I'm just going to create a hypothetical. Let's say there's two meanings to a statute, two ways you could interpret it, and one is 60 percent likely and one is 40 percent likely. Is it ambiguous? The question under Chevron Step 1 is whether Congress spoke precisely to the question. Oh, they don't use the word precisely. And I'm asking a different question. Is it ambiguous is all I'm asking. 60-40, ambiguous? Yes, Your Honor. 70-30, ambiguous? Your Honor, I understand the question that you're asking, which is at what point does something that has a best meaning become unambiguous. But in this case, given that there are a number of different ways that the provision could be used. Well, what you said is just because, I'm sorry to interrupt you, but what you said is just because there's multiple meanings, it's ambiguous. And that's not accurate. I apologize if. . . You don't have to apologize. Yeah, don't apologize. What I'm suggesting is that neither party to this case has put forward the best reading as you're suggesting. The district court didn't do that either. What the district court said was it could mean several things. It doesn't mean this. It was a negative case by the district court, a carefully done negative case, but negative. And so I submit that that's all I was saying, that, in fact, in this case, the district court's Chevron Step 1 conclusion was incorrect. Well, it didn't really reach a positive case answer of what does it mean. Just a factual question. This program was in place for only two years, 12-13, correct? 13-14, yes, Your Honor. Okay. So it was just a two-year kind of ramp-up or something? Yeah, it was intended to expand Medicaid's reach to new providers in advance of the expansion of Medicaid as part of the Affordable Care Act. All right. Any further questions? Not from me. Thank you, counsel. The case will be submitted. May call the next case.